J-A05014-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| R.L.S., M.D. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| B.T.M. | : | |
| | : | |
| Appellee | : | No. 1036 WDA 2016 |

Appeal from the Order June 17, 2016
In the Court of Common Pleas of Westmoreland County
Civil Division at No(s):  158 of 2015-D

BEFORE:   GANTMAN, P.J., BENDER, P.J.E., and MOULTON, J.

MEMORANDUM BY GANTMAN, P.J.:                    **FILED APRIL 21, 2017**

Appellant, R.L.S., M.D. ("Father"), appeals from the order entered in the Westmoreland County Court of Common Pleas, which dismissed his custody complaint and granted sole legal and physical custody of A.R.S. ("Child") to B.T.M. ("Sister").  After careful review, we vacate and remand for dismissal of Sister's counterclaim and reinstatement of the court's February 13, 2015 temporary custody order.

The relevant facts and procedural history of this case are as follows. Child was born in May 1999, to Mother and Father, who were married at the time.  Mother and Father subsequently divorced, and have had various different custody arrangements over the years.  At some point, Child's relationship with Father deteriorated; and Child began to experience emotional trauma when she interacted with Father.  As a result, the court

issued a custody order on October 1, 2013, which granted Mother sole legal and primary physical custody. Pursuant to the October 1, 2013 custody order, Father had partial physical custody of Child, as agreed to between Child and Father. Father and Child were also to engage in supervised instant messaging session for one year to achieve reconciliation between Child and Father. All attempts at reconciliation between Child and Father failed, and Father has not had contact with Child in years.

In 2014, doctors diagnosed Mother with cancer, and Mother ultimately died of her illness on January 29, 2015. Sister immediately assumed all parental responsibilities with respect to Child. On February 1, 2015, Father filed a custody complaint for sole legal and physical custody of Child. Sister filed a counterclaim on February 10, 2015, which sought primary legal and physical custody of Child. After a hearing on February 11, 2015, the court granted Sister *in loco parentis* status and awarded Sister temporary sole legal and physical custody of Child on February 13, 2015. The court scheduled the custody trial to begin on May 20, 2015.

On February 17, 2015, Father filed an answer and new matter to Sister's counterclaim, which challenged the court's grant of *in loco parentis* status to Sister and asked the court to dismiss Sister's counterclaim for custody. On April 8, 2015, the court held a status conference, where the court rescheduled the custody trial to begin on July 28, 2015, to allow the parties to file briefs on the standing issue. Father then filed multiple

motions, which resulted in a hearing on May 21, 2015. At the May 21, 2015 hearing, the court: (1) rescheduled the custody trial for August 28, 2015 due to Father's work obligations; (2) granted Father's request for an enlargement of time to file his brief; (3) ordered Sister to compile a list of dates she spent with Child from March 2013 onward; (4) approved Child's move to West Virginia with Sister with the consent of Father; (5) denied Father's request to remove the guardian *ad litem*; and (6) ordered all parties to undergo custody evaluations with Dr. O'Hara in a timely fashion. Father filed his brief concerning the standing issue on June 10, 2015, and Sister filed her reply on June 29, 2015.

On July 17, 2015, the parties appeared for a hearing after Dr. O'Hara raised concerns about his ability to perform the custody evaluations. Specifically, Dr. O'Hara informed the court Father had threatened to file a HIPAA[1] complaint against him due to Father's concerns with the setting of the custody evaluation. After a discussion with all parties, Dr. O'Hara agreed to continue with the case and finish performance of the custody evaluations. The court kept the scheduled trial date of August 28, 2015, and ordered Father to cooperate with all of Dr. O'Hara's requests. On July 20,

_____

[1] HIPAA is the Health Insurance Portability and Accountability Act, at 42 U.S.C.A. § 1320d-1 *et seq*. "HIPAA 'provides for monetary fines and various terms of imprisonment for the wrongful disclosure of individually identifiable health information.'" **Lykes v. Yates**, 77 A.3d 27, 31 (Pa.Super. 2013) (citation omitted).

2015, Father filed a motion to remove Dr. O'Hara as the custody evaluator. The court held a hearing on the motion on August 20, 2015, where Father informed the court that he had filed a HIPAA complaint against Dr. O'Hara. Dr. O'Hara testified at the hearing that he believed he could be professionally neutral, but personally wanted to withdraw as custody evaluator. Sister testified that she did not consent to removal of Dr. O'Hara as the custody evaluator because she and Child were already halfway through the evaluation process. The court ultimately granted Father's request to remove Dr. O'Hara as the evaluator and continued the custody trial generally to allow the parties time to agree to a new custody evaluator.

At a hearing on October 8, 2015 to address Father's motion for psychological evaluation of Child, the court addressed the status of the custody evaluations. The court learned the parties had yet to choose a new custody evaluator. Father also informed the court that he did not believe custody evaluations were necessary until the court resolved the issue of Sister's standing. The court informed Father it could not resolve the standing issue without completion of the custody evaluations. On October 21, 2015, the court formally removed Dr. O'Hara as the custody evaluator and appointed Dr. Saar to perform the custody evaluations of the parties. On November 23, 2015, Father filed a motion for summary judgment, which again challenged Sister's standing to pursue custody of Child. Sister filed a response in opposition on December 14, 2015. On December 17, 2015, the

court ordered Father to file all necessary releases to allow Dr. Saar to perform the custody evaluations and stated further delay of the custody evaluations would result in sanctions.

On January 6, 2016, the court held argument on Father's motion for summary judgment. At the conclusion of the hearing, the court took the matter under advisement; however, the court also informed the parties that it still expected full participation in the custody evaluations with Dr. Saar. In response, Father again told the court he did not believe the custody evaluations were necessary due to the issue of Sister's standing. On March 4, 2016, the court denied Father's motion for summary judgment based on its conclusion that the issue of Sister's standing was not ripe for consideration. The court noted Father's failure to cooperate and participate in the custody evaluations and stated the insight provided by the custody evaluations was necessary to determine the standing issue. The March 4, 2016 order informed the parties that failure to complete the custody evaluations within ninety days would result in dismissal of the custody complaint pursuant to Pa.R.C.P. 1915.4(b).

On June 17, 2016, the court held a hearing at Father's request, where Father admitted his failure to complete the custody evaluations and asked the court to enter an appealable order enforcing the March 4, 2016 order. The court then dismissed Father's custody complaint, granted Sister's counterclaim, and entered a final custody order, which granted Sister sole

legal and physical custody of Child. In its disposition, the court noted that it was unable to address the custody factors pursuant to 23 Pa.C.S.A. § 5328(a) due to Father's failure to complete the custody evaluation. Father filed a notice of appeal and concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) on July 18, 2016. Because Father's Rule 1925(a)(2)(i) statement raised over eighty issues, the court ordered Father to file an amended Rule 1925(a)(2)(i) statement on July 25, 2016. Father complied on August 5, 2016.

Father raises the following issue for our review:

> [WHETHER] THE [TRIAL] COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION IN DISMISSING FATHER'S COMPLAINT AND AWARDING PHYSICAL AND LEGAL CUSTODY TO [SISTER?]

(Father's Brief at 8).

Father argues he diligently tried to move the case forward toward the custody trial and a final custody order. Father submits the court's failure to schedule hearings on Father's numerous motions and emergency petitions thwarted his efforts to proceed with the case. Father maintains Dr. O'Hara's actions and the court's decision to continue the custody trial were responsible for the delay in the case. Father further challenges the court's award of sole legal and physical custody of Child to Sister. Father asserts dismissal of Father's complaint pursuant to Rule 1915.4(b) required dismissal of Sister's counterclaim, and Sister lacked standing to pursue custody of Child. Father finally claims the court erred when it entered a final

custody order without the completion of a full best interest of the child analysis. Father concludes the court improperly dismissed his custody complaint and granted Sister's counterclaim through entry of a final custody order, and this Court should vacate and remand for a full custody trial. We disagree with Father's assertion that the court improperly dismissed his custody complaint, but we are constrained to agree that the court improperly granted Sister's counterclaim through entry of a final custody order.

"The correctness of [a] trial court's application of a Rule of Civil Procedure raises a pure question of law. As with all questions of law, our standard of review is *de novo* and our scope of review is plenary." **Harrell v. Pecynski**, 11 A.3d 1000, 1003 (Pa.Super. 2011) (internal citations omitted). Pennsylvania Rule of Civil Procedure 1915.4(b) provides in relevant part as follows:

**Rule 1915.4.  Prompt Disposition of Custody Cases**

\* \* \*

**(b)   Listing Trials Before the Court.** Depending upon the procedure in the judicial district, within 180 days of the filing of the complaint either the court shall automatically enter an order scheduling a trial before a judge or a party shall file a praecipe, motion or request for trial, except as otherwise provided in this subdivision. If it is not the practice of the court to automatically schedule trials and neither party files a praecipe, motion or request for trial within 180 days of filing of the pleading, the court shall *sua sponte* or on motion of a party, dismiss the matter unless a party has been granted an extension for good cause shown, or the court finds that dismissal is not in the best

interests of the child. The extension shall not exceed 60 days beyond the 180 day limit. A further reasonable extension may be granted by the court upon agreement of the parties or when the court finds, on the record, compelling circumstances for further reasonable extension. If an extension is granted, and thereafter, neither party files a praecipe, motion or request for trial within the time period allowed by the extension, the court shall, *sua sponte* or on the motion of a party, dismiss the matter unless the court finds the dismissal is not in the best interests of the child. A motion to dismiss, pursuant to this rule, shall be filed and served upon the opposing party. The opposing party shall have 20 days from the date of service to file an objection. If no objection is filed, the court shall dismiss the case. Prior to a *sua sponte* dismissal, the court shall notify the parties of an intent to dismiss the case unless an objection is filed within 20 days of the date of the notice.

Pa.R.C.P. 1915.4(b). Rule 1915.4(b) "unambiguously requires that a trial court dismiss an action if trial has not been scheduled within 180 days of filing of the pleading or if the moving party has not been granted an extension for good cause shown." **Harrell, supra** at 1005.

Instantly, Father filed his custody petition on February 1, 2015, and Sister filed a counterclaim for sole legal and physical custody on February 10, 2015. After a hearing, the court granted Sister *in loco parentis* status and temporarily awarded Sister sole legal and physical custody of Child. The court scheduled the custody trial for May 20, 2015; however, in April 2015, the court rescheduled trial for July 28, 2015, after Father raised a challenge to Sister's standing, which required briefing by the parties. On May 21, 2015, the court again rescheduled trial for August 28, 2015, after Father informed the court that work obligations interfered with the July 2015 trial

- 8 -

date. That same day, the court ordered the parties to undergo custody evaluations, which were necessary for disposition of Father's challenge to Sister's standing and for determination of the best interests of Child. The court order required completion of the custody evaluations in time for the August 28, 2015 custody trial.

In July 2015, issues arose between Father and the custody evaluator, Dr. O'Hara, after Father accused Dr. O'Hara of HIPAA violations. At a hearing on July 17, 2015, the parties discussed the issue and Dr. O'Hara agreed to finish performance of the custody evaluations. The court kept the scheduled trial date of August 28, 2015, and ordered Father to cooperate with all of Dr. O'Hara's requests. Nevertheless, Father filed a motion to remove Dr. O'Hara as the custody evaluator on July 20, 2015. On August 20, 2015, the court granted Father's request for removal when the court learned Father had filed a HIPAA complaint against Dr. O'Hara. Because custody evaluations were necessary for the court's disposition of the case, the court had no choice but to continue the custody trial generally for completion of the custody evaluations.

On October 21, 2015, the court appointed Dr. Saar as the custody evaluator by agreement of the parties. The court again ordered the parties to complete the custody evaluations in a timely fashion. Nevertheless, Father failed to comply with the custody evaluation order, which prevented any progress toward scheduling of the custody trial. On November 23,

2015, Father filed a motion for summary judgment, which again raised a challenge to Sister's standing even though Father had made no progress with his custody evaluation. Despite Father's motion, the court repeatedly informed Father he must comply with the custody evaluations to move the case forward to trial. Father, however, remained uncooperative and prevented any progress toward scheduling of the custody trial due to his assertion that the custody evaluations were unnecessary.

On March 4, 2016, the court denied Father's motion for summary judgment based on its determination that it could not decide the standing issue without completion of the custody evaluations. The court's order directed Father to complete the custody evaluations within ninety (90) days or face dismissal of the custody complaint pursuant to Rule 1915.4(b). After the court's entry of the March 4, 2016, Father failed to make any progress with his custody evaluation and did not ask the court for an extension to complete the custody evaluations. Instead, Father requested a hearing, where he admitted his failure to comply with the March 4, 2016 order and asked the court to enter an appealable order. The court then dismissed Father's complaint and granted Sister's counterclaim through the entry of a final custody order, which gave Sister sole physical and legal custody of Child on June 17, 2016.

Due to Father's actions, five hundred and two (502) days passed between the filing of his custody complaint and the court's dismissal of the

complaint. During this time, the court allowed the case to continue in hopes of resolving the custody dispute to achieve stability for Child. Father, however, thwarted all of the court's attempts to achieve full disposition of the custody issues. Significantly, at no time after August 20, 2015, did the parties request a date for the custody trial, so the case remained generally continued due to Father's ongoing noncompliance with the court-ordered custody evaluations. Father's lack of compliance with the custody evaluation made full disposition of the custody issues impossible and effectively stalled the case. Thus, in light of Father's continuous dilatory conduct and lack of request for an extension, the court was authorized to dismiss Father's custody complaint pursuant to Rule 1915.4(b). **See** Pa.R.C.P. 1915.4(b). Nevertheless, the court erred when it effectively granted Sister's counterclaim through entry of a final custody order. Instead, the court should have dismissed the entire custody matter, including Sister's counterclaim. **See Harrell, supra.** Thus, we are constrained to vacate and remand for complete dismissal of the custody action and reinstatement of the court's February 13, 2015 interim custody order.[2] Accordingly, we vacate and remand with instructions.

Order vacated, case remanded with instructions. Jurisdiction is relinquished.

---

[2] The February 13, 2015 interim custody order gave Sister temporary sole legal and physical custody of Child, who is now almost eighteen years old.

- 11 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/21/2017